IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

ENNY M. ALVARADO,                    §
                                     §
                    Plaintiff,       §
                                     §  Civil Action No. 3:21-CV-1830-D
VS.                                  §
                                     §
THE VALCAP GROUP, LLC,               §
                                     §
                    Defendant.       §

MEMORANDUM OPINION
AND ORDER

This is a suit by plaintiff Enny M. Alvarado ("Alvarado") against defendant The

ValCap Group, LLC ("ValCap"), alleging claims under the Emergency Paid Sick Leave Act

("EPSLA"), a component of the Families First Coronavirus Response Act ("FFCRA"), Pub.

L. No. 116-127, 134 Stat. 178 (2020), and the Americans with Disabilities Act of 1990

("ADA"), as amended, 42 U.S.C. § 12101 *et seq*.  ValCap moves under Fed. R. Civ. P.

12(b)(6) to dismiss for failure to state a claim on which relief can be granted.  Among the

questions presented are whether the EPSLA provides a private right of action and whether

Alvarado has pleaded plausible claims under the ADA.  For the reasons that follow, the court

grants ValCap's motion in part, and denies it in part, and grants Alvarado leave to replead.

I

In September 2020 Alvarado began working full-time for ValCap as a staff accountant.[1]  During her tenure, Alvarado satisfactorily performed the requirements of her position and regularly worked 40 or more hours per week.

On November 9, 2020 ValCap's owner, Richard Fishman ("Fishman"), asked Alvarado's coworker, Noel Beltron ("Beltron"), to take a COVID-19 test and required that Beltron work the following two days while she awaited the results.  During that two-day period, Alvarado worked in close proximity to Beltron.

On November 11, 2020 Laura Wolf ("Wolf"), from ValCap's Human Resources Department, showed Alvarado a text message from Beltron stating that Beltron had tested positive for COVID-19.[2]  Alvarado immediately called her doctor and reported that she had been exposed to someone at work who had tested positive for COVID-19.  Alvarado's doctor ordered her to go home and quarantine for seven days and see if she developed COVID-19 symptoms within that time.

Alvarado reported her doctor's order to Wolf and requested FFCRA-qualifying medical leave, which she alleges was a reasonable accommodation.  Wolf approved

_____

[1]In deciding ValCap's Rule 12(b)(6) motion, the court construes the first amended complaint ("amended complaint") in the light most favorable to Alvarado, accepts as true all well-pleaded factual allegations, and draws all reasonable inferences in Alvarado's favor. *See, e.g., Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004); *see also infra* § II.

[2]The amended complaint alleges that Wolf showed Alvarado the text message on November 11, *2021*.  Because this is an obvious typographical error, the court will assume that the correct date is November 11, 2020.

Alvarado's request and instructed her to send an email to Human Resources stating that she was leaving the office because there were no COVID-19 policies in place and that she had been instructed to quarantine for seven days. Alvarado sent the email as instructed. Shortly thereafter, Wolf called Alvarado and terminated her employment. Wolf stated that Fishman had texted her stating that anyone who went home due to COVID-19 was not permitted back and was not needed.

According to Alvarado's first amended complaint ("amended complaint"), ValCap terminated Alvarado based on her perceived disability, and based on her request for the FFCRA-covered reasonable accommodation of self-quarantine due to concerns of, and exposure to, COVID-19, as directed by a health care provider. ValCap did not provide Alvarado with paid, protected leave, as the FFCRA required.

Alvarado alleges that ValCap also denied other employees paid, protected leave, as the FFCRA required, and/or discriminated against them based on an actual or perceived disability. In particular, ValCap terminated Wolf's employment the day after she was instructed to terminate Alvarado. According to Alvarado's amended complaint, Wolf was terminated in retaliation for her involvement with establishing COVID-19 policies and procedures and engaging in the interactive process to reasonably accommodate employees who actually had, or were perceived as having, COVID-19.

Following her termination, Alvarado filed a claim for retaliation with the Equal Employment Opportunity Commission ("EEOC") and Texas Workforce Commission. After receiving notice of her right to sue, Alvarado filed the instant lawsuit against ValCap. In the

amended complaint,[3] Alvarado alleges claims under the FFCRA and EPSLA for failure to provide paid leave and retaliation or interference, and under the ADA for disability discrimination, failure to accommodate, and retaliation.

ValCap moves to dismiss this action under Rule 12(b)(6).  Alvarado opposes the motion, which the court is deciding on the briefs.

## II

Under Rule 12(b)(6), the court evaluates the pleadings by "accept[ing] 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"  *In re Katrina Canal Breaches Litig*., 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)).  To survive ValCap's motion to dismiss, Alvarado must allege enough facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*.; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough

---

[3]On September 2, 2021 ValCap filed a motion to dismiss Alvarado's complaint.  On October 5, 2021 Alvarado filed an unopposed motion for leave to file an amended complaint, which the court granted.  On October 14, 2021 the court denied ValCap's motion to dismiss, which was addressed to Alvarado's complaint, which had been superseded by her amended complaint.

to raise a right to relief above the speculative level[.]").  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'"  *Iqbal*, 556 U.S. at 679 (alteration omitted) (quoting Rule 8(a)(2)).  Furthermore, under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Although "the pleading standard Rule 8 announces does not require 'detailed factual allegations,'" it demands more than "labels and conclusions."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  And "a formulaic recitation of the elements of a cause of action will not do."  *Id*. (quoting *Twombly*, 550 U.S. at 555).

III

The court begins with ValCap's motion to dismiss Alvarado's claims under the EPSLA and the FFCRA.

A

ValCap contends that Alvarado cannot state a claim on which relief can be granted under the FFCRA and EPSLA because they do not create an independent right of action. Instead, according to ValCap, a plaintiff is required to file suit through another statute to enforce her alleged claims.  The court holds that Alvarado is only alleging claims for violations of the EPSLA and that the EPSLA creates a private right of action.

Congress enacted the FFCRA in March 2020 to address issues stemming from the

- 5 -

COVID-19 pandemic.[4]  The EPSLA, which requires employers to provide up to two weeks of paid sick leave for employees who are or may be infected with COVID-19, is a component of the FFCRA.  *See Kovacevic v. Am. Int'l Foods Inc.*, 2021 WL 3629756, at *2 (W.D. Mich. Aug. 17, 2021) (noting that "[t]he EPSLA and the Emergency Family and Medical Leave Expansion Act . . . are different parts of the FFCRA.").  Although Alvarado refers throughout her amended complaint to the "FFCRA/EPSLA," *see, e.g.,* Am. Compl. ¶ 38, she alleges in the paragraph of her amended complaint that details the nature of the claims that her action is "for monetary damages pursuant to the Emergency Paid Sick Leave Act ('EPSLA') *of the* Families First Coronavirus Response Act ('FFCRA')."  Am. Compl. ¶ 1 (emphasis added). And it is clear from the allegations of the amended complaint that, despite the repeated references to the "FFCRA/EPSLA," Alvarado only alleges claims for violations of the EPSLA.  The court therefore construes Alvarado's claims under the FFCRA/EPSLA as being asserted under the EPSLA alone.

The court holds that the EPSLA creates a private right of action by adopting the enforcement mechanisms of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*. *See* FFCRA § 5105, 134 Stat. at 197 ("An employer who violates section 5102 shall—(1) be considered to have failed to pay minimum wages in violation of section 6 of the [FLSA] (29 U.S.C. 206); and (2) be subject to the penalties described in sections 16 and 17 of such Act (29 U.S.C. 216; 217) with respect to such violation."); *see also Stacey v. The ValCap Grp.*

---

[4]The FFCRA's leave requirements expired on December 31, 2020.  *See* FFCRA § 5109, 134 Stat at 198.

*LLC*, 2021 WL 6135486, at *2 (N.D. Tex. Dec. 27, 2021) (Lynn, C.J.) (denying motion to dismiss EPSLA claim and concluding that the statute, by incorporating FLSA's enforcement provisions, includes a private right of action); *Haney-Filippone v. Agora Cyber Charter Sch.*, ___ F.Supp.3d ___, 2021 WL 1853434, at *2 n.2 (E.D. Pa. May 10, 2021) ("The U.S. Code and the Code of Federal Regulations make clear that Plaintiff has a private right of action . . . under [the EPSLA].").

Accordingly, the court denies ValCap's motion to dismiss to the extent it is based on the contention that the EPSLA does not create a private right of action.

B

ValCap contends that, because the EPSLA does not prohibit an employer from "interfering" with an employee's rights under the statute, Alvarado's EPSLA claim must be dismissed.

The EPSLA makes it unlawful to "discharge, discipline, or in any other manner discriminate" against an employee who takes leave under the act. EPSLA § 5104, 134 Stat. at 196-97. Unlike the Family and Medical Leave Act of 1993 ("FMLA"), there is no provision in the EPSLA that specifically prohibits an employer from "interfering" with an employee's rights under that statute. *Cf.* 29 U.S.C. § 2615(a)(1) ("It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter."). And at least one district court has held that a plaintiff cannot state an EPSLA claim by alleging that her employer interfered with her rights under the EPSLA. *See Kovacevic*, 2021 WL 3629756, at *4 ("The FMLA expressly

- 7 -

prohibits the employer from *interfering* with the employee's rights under the FMLA.  The EPSLA did not.  Thus, Kovacevic cannot claim that AIF interfered with her rights under the EPSLA.  Accordingly, the Court will dismiss the EPSLA claim to the extent it relies upon Kovacevic's theory that AIF interfered with her rights under that statute.").[5]  Accordingly, the court grants ValCap's motion to dismiss Alvarado's EPSLA claim to the extent it is based on the allegation that ValCap "interfered" with her rights under the EPSLA.  In granting ValCap's motion in this respect, however, the court does not suggest that conduct that allegedly interferes with a person's rights under the EPSLA cannot be the basis for an EPSLA claim if such interference takes the form of a discharge, discipline, or another discriminatory act and is pleaded on that basis rather than as an interference-based claim.

## C

Finally, ValCap contends that, because Alvarado did not actually take leave (she only requested it), she cannot state a claim for retaliation under the EPSLA.  Alvarado responds that she has alleged that she was ordered to quarantine by her healthcare professional due to COVID-19 concerns; that she informed ValCap about her doctor's orders, and her leave was approved; that, after approving the leave, ValCap terminated her because of her COVID-19-

---

[5]In her response, Alvarado cites *Simone v. Harborview Rehabilitation & Care Center*, 2021 WL 2291341, at *5 (E.D. Pa. June 4, 2021), for the proposition that "other courts have found that there is a claim for interference under the EPSLA."  P. Br. 4.  In *Simone* the district court denied summary judgment on the plaintiff's "FFCRA interference claim," because there was a question of material fact regarding whether the plaintiff was fired or had resigned.  But the court did not address the question whether the EPSLA prohibits an employer from "interfering" with an employee's rights under the statute, nor does this issue appear to have been raised.  Accordingly, this court is unpersuaded by *Simone*.

related leave; and that "[w]hile Defendant terminated [her] in the beginning of her leave, she had in fact begun her leave and was terminated for doing so."  P. Br. 5.

Under the EPSLA, employers are required to "provide to each employee employed by the employer paid sick time to the extent that the employee is unable to work (or telework) due to a need for leave because: . . . (2) The employee has been advised by a health care provider to self-quarantine due to concerns related to COVID-19."  FFCRA § 5102(a)(2), 134 Stat. at 195-96.  And an employer cannot "discharge, discipline, or in any other manner discriminate against" an employee who "takes leave in accordance with this Act; and has filed any complaint or instituted or caused to be instituted any proceeding under or related to this Act." § 5104(1), 134 Stat. at 196-97.

Assuming *arguendo* that the EPSLA prohibits retaliation only against employees who actually take leave, and not against those who merely request leave,[6] the court nevertheless denies this ground of ValCap's motion because Alvarado has plausibly pleaded that she took leave in accordance with the EPSLA.

Alvarado's amended complaint alleges that her health care provider ordered her to self-quarantine due to her COVID-19 exposure; that Alvarado requested "FFCRA qualifying

---

[6]*See, e.g., Piotrowski v. Signature Collision Ctrs., LLC*, 2021 WL 4709721, at *3-4 (E.D. Pa. Oct. 8, 2021) (dismissing EPSLA claim where employee "request[ed] and attempt[ed]" to take leave under the EPSLA, but neither took leave pursuant to EPSLA nor initiated any type of enforcement proceeding against his employer prior to instant lawsuit); *Colombe v. SGN, Inc*., 2021 WL 1198304, at *3, *5 (E.D. Ky. Mar. 29, 2021) (holding that "taking valid leave pursuant to the provisions of the EPSLA is a necessary condition for success on" a retaliation claim, and that, unlike claims under the FMLA, the "FFCRA does not extend to requests for or attempts at leave").

medical leave,"[7] Am. Compl. ¶ 23; that Valcorp approved Alvarado's request; and that "[s]hortly thereafter," she was terminated because Fishman had advised Wolf that "anyone who went home due to COVID-19 was not permitted back and [was] not needed," *id.* at ¶ 29. These allegations are sufficient to plausibly plead that Alvarado took leave in accordance with the EPSLA. *See, e.g., Gracia v. Law Offices of Alexander E. Borell, P.A.*, 535 F.Supp.3d 1268, 1273 (M.D. Fla. 2021) (holding that plaintiff stated a plausible claim for relief under EPSLA by alleging that she "was exposed to COVID-19, [was] advised to self-quarantine by her health care provider, and was terminated by Defendants shortly after she requested 'leave' to quarantine, allegedly for requesting such 'leave.'").

Because ValCap does not move to dismiss Alvarado's EPSLA retaliation claim on any other ground,[8] the court declines to dismiss Alvarado's EPSLA claim except as set out above:

---

[7]ValCap does not dispute that Alvarado has plausibly alleged a qualifying "need for leave" under the EPSLA.

[8]Section 5104 of the EPSLA makes it "unlawful for any employer to discharge, discipline, or in any other manner discriminate against any employee who—(1) takes leave in accordance with [the EPSLA]; *and* has filed any complaint or instituted or caused to be instituted any proceeding under or related to this Act (including a proceeding that seeks enforcement of this Act), or has testified or is about to testify in any such proceeding." (emphasis added). At least one district court has noted that, "[o]n its face, the EPSLA requires a plaintiff to take both steps—(1) take leave and (2) file a complaint or institute a proceeding—in order to assert a retaliation claim." *Piotrowski*, 2021 WL 4709721, at *4; *but cf. Figueroa Collazo v. Ferrovial Construccion PR, LLC*, 2021 WL 4482268, at *4 (D.P.R. Sept. 30, 2021) ("[F]ailing to provide the paid leave under EPSLA is a violation to federal wages under the FLSA. Furthermore, any discrimination as to the employee taking said leave, *or* filing and/or participating in a complaint related thereto, is a violation of the anti-retaliation provision contained in the FLSA." (emphasis added)). ValCap contends only that Alvarado has failed to plead that she took leave. Accordingly, the court does not consider whether Alvarado is required to allege, or has adequately pleaded, that she also filed

i.e., insofar as Alvarado attempts to assert a claim based on the allegation that ValCap "interfered" with her rights under the EPSLA.  *See supra* at § III(B).

IV

The court now turns to Alvarado's ADA discrimination claim.

A

The ADA mandates that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).  When a plaintiff does not present direct evidence of discrimination, the court analyzes the claim using the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[9]  *See Seaman v. CSPH, Inc.*, 179 F.3d 297, 300 (5th Cir. 1999) (holding that *McDonnell Douglas* framework, which is used in Title VII cases, applies to ADA cases when only circumstantial evidence of discrimination is offered).  Under this framework, the plaintiff must establish a prima facie case of discrimination by showing that (1) she suffers from a disability or is regarded as disabled; (2) she is qualified for the job despite the disability; (3) she was subjected to an adverse employment action due to her disability; and (4) she was replaced by a non-disabled person or treated less favorably than non-disabled

---

a complaint or instituted a proceeding.

[9]The parties appear to agree that Alvarado's ADA claim should be analyzed using the *McDonnell Douglas* framework.

- 11 -

employees.  *See, e.g., Milton v. Tex. Dep't of Crim. Justice*, 707 F.3d 570, 573 (5th Cir. 2013) (quoting *Daigle v. Liberty Life Ins. Co.*, 70 F.3d 394, 396 (5th Cir. 1995)).[10]

B

ValCap moves to dismiss Alvarado's ADA discrimination claim on the ground that she has not plausibly alleged that she was disabled[11] or regarded as disabled.

1

The ADA defines disability as: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment[.]"   42 U.S.C. §

_____

[10]The familiar *McDonnell Douglas* standard for evaluating employment discrimination claims is an evidentiary framework, not a pleading standard.  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).  Accordingly, "a plaintiff need not make out a prima facie case of discrimination in order to survive a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013) (citing *Swierkiewicz*, 534 U.S. at 510-12); *see also, e.g., Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 470 (5th Cir. 2016) (Title VII case) ("Although Chhim did not have to submit evidence to establish a prima facie case of discrimination at this stage, he had to plead sufficient facts on all of the ultimate elements of a disparate treatment claim to make his case plausible.").  To survive ValCap's motion to dismiss, however, Alvarado must plausibly allege the ultimate elements of her ADA claim.  *See Chhim*, 836 F.3d at 370.  And since *McDonnnell Douglas* will ultimately govern when a plaintiff relies on indirect evidence of discrimination, it can be helpful to reference that framework when the court is determining whether a plaintiff has plausibly alleged the ultimate elements of her claim.  *See Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 767 (5th Cir. 2019) (Title VII case) ("If a plaintiff's . . . claim depends on circumstantial evidence, he will 'ultimately have to show' that he can satisfy the *McDonnell Douglas* framework.  In such cases, we have said that it can be 'helpful to reference' that framework when the court is determining whether a plaintiff has plausibly alleged the ultimate elements of the . . . claim." (quoting *Chhim*, 836 F.3d at 470-71)).

[11]Alvarado clarifies in her response that she does not intend to bring a claim based on the allegation that she had an actual disability.

12102(1).  Under the 2008 amendments to the ADA, an individual is "regarded as" disabled when she is perceived as having a physical or mental impairment, regardless of whether the impairment actually exists or is perceived to limit a major life activity.  *Id.* § 12102(3)(A). An individual cannot be "regarded as having such an impairment," however, if the impairment is "transitory and minor."  *Id.* § 12102(3)(B).[12]  "A transitory impairment is an impairment with an actual or expected duration of 6 months or less."  *Id.*

2

ValCap contends that Alvarado cannot meet her prima facie burden of plausibly pleading a "regarded as" disabled claim for four reasons: (1) Alvarado has not alleged any facts that ValCap perceived her as disabled, and her statement that ValCap "regarded Plaintiff as having COVID-19 following her close and prolonged exposure to a positive person," is a legal conclusion, D. Br. 6 (quoting Am. Compl. ¶ 24); (2) Alvarado has not alleged any facts that she was impaired from performing her work due to being exposed to COVID-19; an alleged exposure to COVID-19 does not demonstrate, without more, that ValCap regarded Alvarado as disabled, because her doctor (not ValCap) recommended that she quarantine at home after her alleged exposure; and (4) under 42 U.S.C. § 12102(3)(B) and guidance provided by the EEOC, exposure to COVID-19 is an impairment that is

_____

[12]With respect to the transitory-and-minor exception to "regarded as disabled" claims, circuit courts disagree about whether a plaintiff must establish as part of her prima facie case that the perceived impairment was not transitory or minor, or whether an employer must prove as an affirmative defense that an impairment was transitory and minor.  *See Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 302-03 (5th Cir. 2020).  The Fifth Circuit has declined to resolve this issue.  *Id.* at 302.

transitory and minor, except "in certain circumstances," and Alvarado's conclusory assumptions based on the overall pandemic are insufficient to plausibly allege that she had, or was regarded as having, an impairment that was not transitory and minor.

Alvarado responds that she has alleged facts sufficient to plead that ValCap regarded her as disabled. She contends that ValCap (i.e., Wolf) informed her about her prolonged exposure to COVID-19 "because [ValCap] perceived her to have contracted COVID-19 as a result and expressly instructed Plaintiff on what she needed to do to request the reasonable accommodation of FFCRA protected leave due to her disability," P. Br. 7; that she has alleged that she was impaired from performing work that involved interacting with coworkers, the public, and/or breaking quarantine and that, in any event, an individual may be "regarded as" disabled when she is perceived as having a physical or mental impairment, regardless of whether the impairment is perceived to limit a major life activity; that she has alleged more than merely that ValCap was aware of her exposure to COVID-19, "alleg[ing] that Defendant informed Plaintiff about her exposure, regarded her as having COVID-19 following her close and prolonged exposure to a positive person and order to quarantine, actively instructed her how to report her COVID-19 related absence, approved her COVID-19 related leave, and then terminated her due to her perceived disability," *id.* at 8; that the cases on which ValCap relies in its motion are distinguishable; and that the EEOC's guidance on "long COVID" is irrelevant because that guidance addressed the requirement for an actual disability, as opposed to a "regarded as" disability and, in any event, ValCap has failed to meet its burden to establish, as a defense, that COVID-19 is transitory and minor.

- 14 -

3

The court concludes that Alvarado has not pleaded sufficient facts in the amended complaint for the court to draw the reasonable inference that Wolf or anyone else at ValCap regarded Alvarado as disabled.  The amended complaint alleges that Wolf showed Alvarado a text message stating that Beltron had tested positive for COVID-19; that as soon as she learned of Beltron's diagnosis, Alvarado informed her doctor; that Alvarado's doctor ordered her to quarantine for seven days; that Alvarado reported her doctor's order to Wolf and requested FFCRA leave; and that Wolf approved Alvarado's leave request, instructing her to send an email stating that she "was leaving the office because there were no COVID-19 policies in place and that she was instructed to quarantine for seven days," Am. Compl. ¶ 27.  These allegations do not permit the reasonable inference that "Wolf regarded Plaintiff as having COVID-19 following her close and prolonged exposure to a positive person and order to quarantine," *id.* at ¶ 24.  At most, they permit the reasonable inference that Wolf knew one of Alvarado's coworkers, with whom Alvarado was in close contact, had tested positive for COVID-19; that Alvarado was following her doctor's orders and self-quarantining for seven days; and that it would be seen whether Alvarado developed COVID-19 symptoms within the quarantine period.  Alvarado has not plausibly alleged that Wolf or any other person at ValCap believed that Alvarado had actually contracted COVID-19 from Beltron.[13]

_____

[13]The court will assume *arguendo* that COVID-19 is an ADA-qualifying disability or impairment, even though district courts disagree on the issue.  *Compare Champion v. Mannington Mills, Inc.*, ___ F.Supp.3d ___, 2021 WL 2212067, at *5 (M.D. Ga. May 10, 2021) (explaining that it would be absurd to hold that workers who contracted COVID-19

- 15 -

Nor has Alvarado otherwise plausibly pleaded that she was perceived to have any physical or mental impairment as a result of her possible exposure to the virus or otherwise. Alvarado has at most alleged that her doctor ordered her to quarantine based on her possible exposure to COVID-19, and that Wolf approved Alvarado's request for FFCRA leave *based on her doctor's order to quarantine*. The facts alleged in the amended complaint are simply insufficient to support the conclusory allegation that "Wolf regarded Plaintiff as having COVID-19." *Id.* And they certainly do not support the legal conclusion that "Defendant regarded Plaintiff as disabled." *Id.* at ¶ 26.

Accordingly, because Alvarado has failed to plausibly allege that ValCap regarded her as disabled,[11] the court grants ValCap's motion to dismiss Alvarado's ADA discrimination claim.

---

were "disabled"), *with Burbach v. Arconic Corp.*, ___ F.Supp.3d ___, 2021 WL 4306244, at *6 (W.D. Pa. Sept. 22, 2021) (holding that allegation that plaintiff had trouble breathing as a result of having COVID-19 was sufficient at pleading stage for purposes of ADA claim), *and Matias v. Terrapin House, Inc.*, 2021 WL 4206759, at *4 (E.D. Pa. Sept. 16, 2021) (citing agency guidance to conclude that COVID-19 may be an ADA disability as it is not always transitory and is not minor).

[11]Because the court concludes that Alvarado has failed to plausibly plead that ValCap regarded her as disabled, it does not address ValCap's other arguments directed at Alvarado's ADA discrimination claim (i.e., that Alvarado has failed to plead that she was impaired from performing her work due to being exposed to COVID-19 and that COVID-19 is an impairment that is "transitory and minor").

V

The court also grants ValCap's motion to dismiss Alvarado's failure to accommodate claim.

It is clearly established in the Fifth Circuit that an employer is not required to provide a reasonable accommodation to an individual who meets the definition of disability solely under the "regarded as" prong. *Amedee v. Shell Chem., L.P.*, 953 F.3d 831, 837 (5th Cir. 2020) ("To establish a failure-to-accommodate claim, Amedee must demonstrate that she had a disability, not just that she was regarded as disabled." (footnote omitted)); *see also Newberry v. E. Tex. State Univ.*, 161 F.3d 276, 280 (5th Cir. 1998) ("[A]n employer need not provide reasonable accommodation to an employee who does not suffer from a substantially limiting impairment merely because the employer thinks the employee has such an impairment.").   In her response to ValCap's motion to dismiss this claim, Alvarado "concedes that . . . her claim is for perceived disability." P. Br. 11.  Because Alvarado does not allege that she was actually disabled—she asserts only that she was regarded as disabled—the court grants ValCap's motion to dismiss her failure to accommodate claim.

VI

Finally, the court turns to Alvarado's ADA retaliation claim.

A

The ADA prohibits an employer from "discriminat[ing] against any individual because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge, testified, assisted, or participated in any manner in

- 17 -

an investigation, proceeding, or hearing under [the ADA]." 42 U.S.C. § 12203(a). To establish a prima facie case of unlawful retaliation under the ADA, the plaintiff must show that: (1) she engaged in an activity protected by the ADA, (2) she suffered an adverse employment action, and (3) there is a causal connection between the protected activity and the adverse action. *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 304 (5th Cir. 2020).

B

ValCap moves to dismiss Alvarado's ADA retaliation claim on the ground that Alvarado has not pleaded facts that show that she engaged in a protected activity under the ADA. To the extent that Alvarado bases her claim on the allegation that she requested "the reasonable accommodation of FFCRA qualifying medical leave," Am. Compl. ¶ 23, ValCap contends that a request for FFCRA leave is not a request for a reasonable accommodation under the ADA because "[a] request for a reasonable accommodation under the ADA communicates that the employee can perform the essential functions of the job [but] a request for FFCRA qualifying medical leave implies that the employee cannot perform the functions of the job, which is substantially similar to a request for FMLA leave," D. Br. 9-10; that it is clearly established that a request for FMLA leave is not a request for a reasonable accommodation under the ADA; that a request for FFCRA qualifying medical leave is not a request for a reasonable accommodation under the ADA; and that Fishman's statement that "anyone who went home due to COVID-19 was not permitted back and [was] not needed," Am. Compl. ¶ 29, does not establish that ValCap's decision to terminate Alvarado's employment was based on knowledge that Alvarado requested FFCRA qualifying medical

- 18 -

leave.

Alvarado responds that she has pleaded that she requested accommodations for her perceived disability by alleging that she requested the reasonable accommodation of FFCRA qualifying medical leave, Wolf approved her FFCRA covered reasonable accommodation, and ValCap terminated her on the basis of her perceived disability and request for FFCRA covered reasonable accommodation; that her request for a FFCRA qualifying leave was a request for reasonable accommodations because she requested COVID-19 related leave based on her doctor's orders, and the mere fact that her requested accommodation also provided for additional protections and benefits does not preclude the fact that it was a reasonable accommodation; that "[a] request for doctor ordered medical leave for a disability (the definition of which includes perceived disability) is a textbook example of a request for reasonable accommodations," P. Br. 13; that unlike the FMLA, the FFCRA does not specifically include a definition stating that the employee is unable to perform the functions of the position; and that because the FFCRA qualifying leave that Alvarado requested for her perceived disability was for a mere seven days, and ValCap approved the request without issue, Alvarado's request was "undoubtedly reasonable," *id.* at 14.

C

The ADA protects only against retaliation based on an individual's "oppos[ing] any act or practice made unlawful *by this chapter*." 42 U.S.C. § 12203(a). Alvarado argues in her response brief that "her requests for accommodation qualify as engaging in protected activity," P. Br. 12, but she does not actually plead that she requested an accommodation

- 19 -

*under the ADA*.  In fact, she specifically alleges that she requested "the reasonable accommodation of *FFCRA qualifying medical leave*."  Am. Compl. ¶ 23 (emphasis added). The ADA does not protect against retaliation for requesting leave under the FFCRA.  It only protects against retaliation for activity that is protected under the ADA.

Accordingly, the court grants defendant's motion to dismiss Alvarado's ADA retaliation claim.

## VII

Although the court has in part granted ValCap's motion to dismiss, it will grant Alvarado leave to replead.[12]

> [I]n view of the consequences of dismissal on the complaint alone, and the pull to decide cases on the merits rather than on the sufficiency of pleadings, district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal.

*In re Am. Airlines, Inc., Privacy Litig.*, 370 F.Supp.2d 552, 567-68 (N.D. Tex. 2005) (Fitzwater, J.) (quoting *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002)).  It is not clear that all of the defects in the amended complaint are incurable, and Alvarado has not advised the court that she is unwilling or unable to amend in a manner that will avoid partial dismissal.  Accordingly, the court grants Alvarado 28 days from the date this memorandum opinion and order is filed to file a second amended

---

[12]Although Alvarado has amended once already, the court did not address the merits of ValCap's motion to dismiss her complaint.  *See supra* note 3.

complaint.

*   *   *

For the reasons explained, the court grants in part and denies in part ValCap's motion to dismiss Alvarado's amended complaint, and it grants Alvarado leave to replead.

**SO ORDERED**.

January 3, 2022.

SIDNEY A. FITZWATER
SENIOR JUDGE

- 21 -